O

# United States District Court
# Central District of California

| | |
|---|---|
| CHRISTOPHER STONE,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF LOS ANGELES et al.,<br><br>    Defendants. | Case № 2:22-cv-01150-ODW (RAOx)<br><br>**ORDER GRANTING COUNTY'S MOTION TO DISMISS [21] AND CITY'S MOTION TO DISMISS [24]** |

## I. INTRODUCTION

On March 18, 2022, pro se Plaintiff Christopher Stone filed the operative First Amended Complaint ("FAC") against the City of Los Angeles (the "City"); Los Angeles Police Department ("LAPD") Chief Michael Moore, Los Angeles City Attorney Mike Feuer, the County of Los Angeles (the "County"); County Sheriff Alex Villanueva; and Herman Thomas ("Thomas")—for violations of state and federal law arising from an attempt to serve and enforce certain restraining orders. (*See* FAC, ECF No. 16.)  The County and City each filed a separate motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  The County moves to dismiss all claims Stone asserts against it. (County Mot. Dismiss ("County Mot."), ECF No. 21.)  The City moves to dismiss the sole claim Stone asserts against it.  (City Mot. Dismiss ("City Mot."), ECF No. 24.)  As explained below, the Court **GRANTS** both

motions.[1]

## II. BACKGROUND

This action arises from difficulties Stone encountered when attempting to serve and later to enforce certain permanent restraining orders against third parties Kareem Thomas[2] ("K. Thomas") and Michael Stover. For purposes of these Rule 12(b)(6) motions, the Court accepts Stone's well-pleaded allegations as true. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

### A. Stone's Restraining Order Against K. Thomas

Defendant Herman Thomas is the father of K. Thomas and lives in the same apartment building as Stone. (FAC ¶¶ 4, 16.) K. Thomas is homeless and on at least two occasions, has been placed under a Lanterman-Petris-Short conservatorship in the care of the Los Angeles County Department of Mental Health, Office of the Public Guardian. (FAC ¶¶ 1, 21.)

In October of 2016, while entering his apartment building, Stone had an altercation with K. Thomas. (FAC ¶ 13.) K. Thomas yelled at Stone and forcefully swung open the apartment gate, hurting Stone's hand. (*Id.*) Stone had several subsequent interactions with K. Thomas that he characterizes as "terrifying," and in February 2018, Stone obtained a permanent restraining order against K. Thomas. (FAC ¶¶ 15, 19.) The City Attorney's Office prosecuted K. Thomas "multiple times" for violating Stone's restraining order. (FAC ¶ 20.)

Sometime in early 2021, Stone's restraining order against K. Thomas was set to expire, and Stone set out to renew it. (FAC ¶¶ 34–36.) Stone obtained a temporary restraining order from the Los Angeles Superior Court, which he needed to serve on K. Thomas. Believing that K. Thomas was a conservatee in the care of the Director of the Los Angeles County Department of Mental Health (the "Director"), on February 19, 2021, Stone filed a public records request with the County asking where

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.
[2] Also known as Kaureem Thomas.

to serve the Director.³ (FAC ¶¶ 22, 34–35.) Deputy County Counsel José Silva emailed Stone and informed him that "[t]his office represents the Office of the Public Guardian of the County of Los Angeles[] and is authorized to receive service of process on behalf of the [Director] in the above-referenced matter with respect to the Temporary Restraining Order issued against the conservatee," K. Thomas. (FAC ¶ 35.)

Pursuant to these instructions, Stone hired a third party to serve the Director with the temporary restraining order by effecting service on the County Counsel. (FAC ¶ 36.) At the hearing to renew Stone's permanent restraining order, a Los Angeles Superior Court Judge found the service of the temporary restraining order to be "proper and valid," and on March 9, 2021, Stone's permanent restraining order against K. Thomas was renewed. (*Id.*)

Stone filed the permanent restraining order with the County Sheriff's Department, instructing the Sheriff to serve the restraining order on the County Counsel pursuant to California Code of Civil Procedure section 416.70, in order to effect service on K. Thomas.⁴ (FAC ¶ 37.) Thereafter, Stone received a letter from the Sheriff's Department rejecting the filing and informing Stone that the Sheriff Department does not "subserve restraining orders" because as the "order states[,] respondent must be personally served" and California Code of Civil Procedure section 416.70 refers to a summons and complaint order and not a restraining order. (FAC ¶ 38.) Then, on April 1, 2021, Stone received a letter in response to his earlier public records request from another Deputy County Counsel, Emily Issa, that read:

> This is in response to your February 19, 2021 request for the address for service of legal process on the [Director]. Service of legal process

---

³ In its Motion, the County stated that "conservatees are actually conservatees of the Public Guardian, not the Director of the Department of Mental Health." (County Mot. 4.)
⁴ "A summons may be served on a person . . . for whom a guardian, conservator, or similar fiduciary has been appointed by delivering a copy of the summons and of the complaint to his guardian, conservator, or similar fiduciary and to such person . . . the court in which the action is pending may dispense with delivery to such person." Cal. Code Civ. Pro. § 416.70.

>   for any County department may be made with the Executive Office of the Board of Supervisors at 500 W. Temple Street, Los Angeles, California, 90012. The building is currently closed to the public; however, upon arrival at the entrance, process servers should notify security the reason for their visit, and someone from the Executive Office of the Board of Supervisors will meet them to accept service.

(FAC ¶ 39.) After the Sheriff's Department refused to serve his permanent restraining order, Stone contacted the County Counsel, who informed him that the County Counsel was in the process of moving offices and suggested that Stone serve the Executive Office of the County's Board of Supervisors ("Executive Office") as Emily Issa advised in her letter. (FAC ¶ 40.)

On May 11, 2021, Stone received a *Tarasoff* warning[5] from a Public Guardian Deputy Linda Martinez, informing him that K. Thomas had left treatment without his conservator's approval. (FAC ¶ 22.) Still attempting to serve the permanent restraining order on K. Thomas, Stone contacted the Executive Office, and a staff member informed him that he could make an appointment for someone to meet Stone's process servers, but when Stone informed the staff member that he was serving a permanent restraining order, the staff member refused to schedule an appointment, stating that the County only accepted claims for damages. (FAC ¶ 41.) "Desperate to serve the restraining order," Stone told his process server to call the Executive Office and "falsely tell them he would serve a claim for damages." (FAC ¶ 42.) Stone's process server followed Stone's instruction and served the Executive Office with the renewed permanent restraining order against K. Thomas on May 13, 2021. (*Id.*) Stone recorded a video of the service on his cellphone. (*Id.*)

---

[5] "*Tarasoff* warning" refers to the California Supreme Court case *Tarasoff v. Regents of Univ. of California*, 17 Cal. 3d 425 (1976), where the Court recognized that therapists may have a duty to protect intended victim from dangers posed by their patients, which could include a duty to warn the intended victim of the danger. *Id.* at 431. A *Tarasoff* warning therefore refers to the therapist's notification, to the intended victim, that the patient may be a threat to the intended victim's life.

### B. Stone's Restraining Order Against Stover

At some unknown time, Stone also obtained a restraining order against nonparty Michael Stover. (FAC ¶ 27.) Stone does not provide any further allegations regarding his relationship to Stover or the circumstances of this restraining order.

### C. Stone's Attempts to Enforce His Restraining Orders

On March 31, 2021, Stone called LAPD and reported that Stover was violating his restraining order. (*Id.*) When officers arrived, Stone showed them his restraining order and a video recording of a third-party serving Stover the restraining order. (*Id.*) The officers did not arrest Stover, informing Stone that the process server needs to read aloud the terms of the order to a restrained person. (*Id.*) The officers then read the restraining order terms out loud to Stover and allowed him to walk away. (*Id.*) An officer explained to Stone that "for service to be valid, they have to be served and read the order. Basically, they have to acknowledge and understand that they've been served with the order and are aware of the limitations the order basically presents." (*Id.* (internal quotation marks omitted).) Another officer informed Stone that "he" (presumably Stover), "wasn't aware before of the details of [the order] but we made it like [sic] we said more than crystal clear for him." (*Id.*)

On September 17, 2021, Stone observed K. Thomas outside of his apartment in violation of Stone's restraining order. (FAC ¶ 28.) Stone called the LAPD, who dispatched officers to Stone's apartment building. (*Id.*) Stone showed the officers a copy of the restraining order. (*Id.*) The officers "inquired into the manner of service of the restraining order" and Stone explained that K. Thomas was a conservatee and that K. Thomas' conservator was served, showing the officers the video recording of Stone's process server serving the Executive Office. (*Id.*) The officers "refused to execute the order" and instead, Sergeant Kevin Austin "read aloud the terms of the order" to K. Thomas and then allowed K. Thomas to walk away. (*Id.*) Sergeant Austin then provided Stone with a new proof of service. (*Id.*)

According to Stone, the City "has a policy of avoiding the arrest of homeless individuals, especially for misdemeanors" and "the City's police officers follow this policy by disputing the validity of service of process orders." (FAC ¶ 26.)

### D. Stone's FAC

Stone originally filed this action in state court but on February 18, 2022, the City removed the action to this Court. (*See* Notice Removal, ECF No. 1.) On March 18, 2022, Stone filed the operative FAC. (*See* FAC.)

Under the FAC's header "First Claim for Relief (Violation of Due Process[)]," Stone alleges that he was "denied due process of law" when LAPD officers refused to accept the validity of the service of his restraining orders and when the County refused to accept service of his restraining order against K. Thomas. (FAC ¶ 44.)

Under the header "Third Claim for Relief (Negligent Infliction of Emotional Distress)" Stone alleges that under California Penal Code section 836(c)(1), LAPD officers had a duty to execute his restraining orders because the officers had probable cause to believe the restrained persons "had valid notice" of the restraining order(s) and were in violation of the order(s). (FAC ¶ 50.) Stone also alleges that the County's Executive Office had a duty to receive service of restraining orders under California Government Code section 960.8, and that the County breached that duty by refusing to accept service of the restraining order against K. Thomas. (FAC ¶ 52.) Finally, Stone alleges that the County is liable for the acts and omissions of the Sheriff and the Executive Office staff under California Government Code section 815.2. (FAC ¶ 54.) Specifically, Stone alleges that the County Sheriff had the duty to serve Stone's restraining order under California Government Code section 26608 and that the Sheriff breached that duty when the Sheriff refused to serve the restraining order on K. Thomas's conservator. (FAC ¶ 53.)

Stone seeks a declaratory judgment that the LAPD officers have a duty "to execute restraining orders when a victim presents them with a restraining order bearing a court seal and signed proof of serv[ice] and the restrained person is in the

presence of the victim, and for injunctive relief enjoining" the LAPD Police Chief "to issue a policy directive of this duty." (FAC Prayer for Relief ¶ 1.) Stone further seeks a declaratory judgement that the County has a duty to accept service of restraining orders on behalf of conservatees of the Director of Mental Health at the address published in the Roster of Public Entities. (*Id.* ¶ 3.)

The County now moves to dismiss all claims asserted against the County, and the City moves to dismiss Stone's due process claim as asserted against the City. (*See* City Mot.; County Mot.) Stone did not file an opposition or respond to either motion.

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Additionally, when a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally. *See Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003); *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003) ("Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers."). In particular, "[a] pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded by statute on other grounds as recognized in Lopez v. Smith,* 203 F.3d 1122 (9th Cir. 2000) (en banc). However, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc); Local Rule 83-2.2.3 (requiring pro se litigants to comply with Local Rules, Federal Rules of Civil Procedure, and Federal Rules of Evidence).

### IV. STONE'S FAILURE TO OPPOSE WARRANTS DISMISSAL

Central District of California Local Rule 7-12 provides that the Court "may decline to consider any memorandum or other document not filed within the deadline set by order or local rule." C.D. Cal. L.R. 7-12 ("The failure to file [a responsive document], or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion. . . ."); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (affirming dismissal on the basis of unopposed motion pursuant to local rule). Prior to dismissing an action pursuant to a local rule, courts must weigh: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases o[n] their merits; and (5) the availability of less drastic sanctions." *Ghazali*, 46 F.3d at 53 (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). In *Ghazali*, the Ninth Circuit found these factors supported dismissal where the plaintiff received notice of the motion, had "ample opportunity to respond," yet failed to do so. *See Ghazali*, 46 F.3d at 54. Even so, "[e]xplicit findings with respect

to these factors are not required." *Ismail v. County of Orange*, SACV 10-00901 VBF (AJW), 2012 WL 12964893, at *1 (C.D. Cal. Nov. 7, 2012) (citing *Henderson*, 779 F.2d at 1424; *accord, Malone v. U.S. Postal Serv.*, 833 F.2d 128, 129 (9th Cir. 1987), *cert. denied*, 488 U.S. 819 (1988)).

Here, Stone received notice of both motions and had ample opportunity to respond yet failed to do so. Although Stone is not represented by counsel, he is a registered CM/ECF user who receives notice of electronic filings in this action. (*See* ECF Nos. 17, 19.) Further, counsel for the City and the County met and conferred with Stone regarding the instant motions. (County Mot. 17, Decl. Renee E. Jensen ¶ 3; City Mot. 2.) Finally, in response to the Court's order to show cause, on June 9, 2022, Stone used CM/ECF to file a declaration and requests for summons in order to serve his First Amended Complaint on other named Defendants. (ECF Nos. 28, 32.) Thus, Stone was well aware of the motions to dismiss and has even been active in this matter after the County and City filed their motions on April 1, 2022, and April 4, 2022, respectively. (ECF Nos. 21, 24.) Additionally, Stone offers no excuse for failing to oppose the motions and has not sought an extension or other relief. As such, the Court construes Stone's failure to respond to either motion as consent to the Court granting the motions. Accordingly, pursuant to Local Rule 7-12 and *Ghazali*, the Court **GRANTS** the City's and County's motions.

Although the Court grants both motions as unopposed, the Court proceeds to address the merits of each motion in turn, in order to provide Stone with notice of the FAC's deficiencies and a meaningful opportunity to amend.

### V. THE CITY'S MOTION TO DISMISS

Stone alleges that LAPD officers unlawfully required him to "effect multiple methods of service" on K. Thomas and Stover before executing his restraining orders, and that he was "denied due process of law" when officers refused to "accept the validity" of his service of the restraining orders against Stover and K. Thomas. (FAC ¶¶ 2, 44.) Stone attempts to impose liability on the City for the LAPD officers'

conduct. The City moves to dismiss Stone's 42 U.S.C. § 1983 claim arguing that Stone does not have a due process right to the "execution of a restraining order in any particular way, let alone to its service in any particular way." (City Mot. 6.)

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In his § 1983 claim, Stone alleges a violation of his due process rights under the Fourteenth Amendment. (FAC ¶ 45.) Accordingly, the issue here is whether the LAPD officers' treatment of Stone's restraining orders violated Stone's constitutional right to due process.

In *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005), the Supreme Court addressed whether an individual, Gonzales, who had "obtained a state-law restraining order[, had] a constitutionally protected property interest in having the police enforce the restraining order when they [had] probable cause to believe it had been violated." *Id.* at 750. Gonzales brought a 42 U.S.C. § 1983 action against the Town of Castle Rock, Colorado claiming that it violated the Due Process Clause of the Fourteenth Amendment when its police officers, acting pursuant to official policy or custom, failed to respond properly to her repeated reports that her estranged husband was violating the terms of a restraining order. *Id.* at 751. The Court held that Gonzales did not, "for the purposes of the Due Process Clause, have a property interest in police enforcement of a restraining order against her husband." *Id.* at 768; *see DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989) (recognizing that, absent special circumstances, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause"); *Martinez v. City of Clovis*, 943 F.3d 1260, 1273 (9th Cir. 2019) ("[T]he benefit that a third party

may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause." (quoting *Castle Rock*, 545 U.S. at 768)).[6]

Here, under the header "Negligent Infliction of Emotional Distress," Stone suggests that LAPD officers are required under California Penal Code section 836(c)(1) to execute restraining orders. (FAC ¶ 50.) The section provides:

> [w]hen a peace officer is responding to a call alleging a violation of a . . . restraining order . . . and the peace officer has probable cause to believe that the person against whom the order is issued has notice of the order and has committed an act in violation of the order, the officer shall, consistent with subdivision (b) of Section 13701, make a lawful arrest of the person without a warrant and take that person into custody whether or not the violation occurred in the presence of the arresting officer. . . .

Cal. Penal Code § 836(c)(1). The language appears to create a mandatory duty to make an arrest whenever there is "probable cause to believe that the person against whom the order is issued has notice of the order and has committed an act in violation of the order." *Id.*; *see McFadyen v. County of Tehama*, No. 2:18-cv-02912-TLN-DMC, 2020 WL 4480376, *13 (E.D. Cal. Aug. 4, 2020) (finding that California Penal Code section 836(c)(1) created a mandatory duty to arrest whenever probable cause objectively exists for purpose of liability under section 815.6).

However, despite its mandatory language, section 836(c)(1) does not necessarily make "enforcement of restraining orders mandatory" under *Castle Rock*. *See Pantoja v. Los Angeles County*, No. CV 19-2132 JFW (SS), 2019 WL 4280063, *9 (C.D. Cal. Aug. 13, 2019), report and recommendation adopted, No. CV 19-2132 JFW (SS), 2019 WL 4276633 (C.D. Cal. Sept. 10, 2019) (finding a plaintiff's

---

[6] There are two exceptions to this rule: (1) "a special relationship between the plaintiff and the state may give rise to a constitutional duty to protect"; and (2) "the state may be constitutionally required to protect a plaintiff that it affirmatively places . . . in danger by acting with 'deliberate indifference' to a 'known or obvious danger." *Martinez*, 943 F.3d at 1271 (internal citations and quotations marks omitted). Stone does not allege facts establishing an exception applies here.

restraining order against her ex-husband did not provide her with a substantive due process right to have him arrested for its violation). This holding is based on the California courts' long-standing tradition of recognizing law enforcement discretion. *Id.* (citing *City of Santee v. County of San Diego*, 211 Cal. App. 3d 1006, 1018 (1989)). Additionally, because section 836(c)(1) requires that an arrest is consistent with "subdivision (b) for Section 13701"—and this subdivision provides for an exception for "exigent circumstances"—the arrest requirement, at least in the domestic violence context, is "not absolute." *Id*.

Moreover, whether or not section 836(c)(1) mandates enforcement of civil restraining orders, the mere fact that a state law mandates arrests does not mean that Stone has a "property interest" protected by the Due Process Clause. *See Castle Rock*, 545 U.S. at 766. Under *Castle Rock*, Stone does not have a property interest in the enforcement of his restraining order and "the benefit a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process clause." *Id.* at 768. Thus, irrespective of whether Stone alleges that he had a due process right to have the service of his restraining orders accepted as valid, or whether he alleges he had a due process right to have K. Thomas and Stover arrested for violating the restraining orders, his claim fails. Accordingly, Stone has failed to plausibly allege that the City, through its police officers, deprived him of a cognizable constitutional right.

The Court therefore **GRANTS** the City's motion dismiss Stone's 42 U.S.C. § 1983 claim. Although it appears unlikely that Stone can state a 42 U.S.C § 1983 claim for violation of his due process rights under the facts presented in his FAC, the Court cannot conclude at this stage in the proceeding that any amendment would be futile. Out of an abundance of caution, the Court provides Stone **with leave to amend** this claim to address the above-discussed deficiencies. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034–35 (9th Cir. 2008).

## VI. THE COUNTY'S MOTION TO DISMISS

The County moves to dismiss Stone's constitutional due process claim, arguing that Stone failed to allege the deprivation of a cognizable constitutional right. (County Mot. 5–6.) The County also moves to dismiss Stone's negligence claim on the grounds that there is no mandatory statutory duty to accept service of a restraining order and the County is otherwise immune from tort liability. (County Mot. 10–12.)[7]

### A. Stone's 42 U.S.C. § 1983 Claim

Stone alleges that he was "denied due process of law" when the County's Executive Office refused to accept service of Stone's restraining order against conservatee K. Thomas. (FAC ¶ 44.) The Court finds that Stone has not adequately pleaded that he was deprived of "any rights, privileges, or immunities secured by the Constitution and laws,'" *Castle Rock*, 545 U.S. at 755 (2005) (quoting 42 U.S.C. § 1983), because the right to serve the government with a restraining order against one of its conservatees is not a right protected under the Fourteenth Amendment.

As discussed above, a failure to enforce a restraining order does not support a due process violation. To the extent that Stone alleges he has a right to have the government's acceptance of service of a restraining order in the manner he chooses, Stone fails to allege a due process violation and instead, merely seeks a benefit to a procedural process. In *Castle Rock*—where Gonzales believed the officers' failure to arrest her husband after he violated her restraining order amounted to a due process violation—the Court observed that any purported right to have law enforcement arrest someone pursuant to a restraining order was "inadequate to even support standing . . . much less can it be the basis for a property interest." *Id.* at 764 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). Two justices joined in a concurring opinion, explaining that a state does not "create a property right merely by ordaining beneficial procedure unconnected to some articulable substantive

---

[7] As the Court is granting the County's motion due to failure to state a claim, the Court does not address the County's additional arguments regarding Stone's requested remedies of declaratory and injunctive relief. (*See* County Mot. 13–15.)

guarantee." *Castle Rock*, 545 U.S. at 771–72 (J. Souter concurring). The government's acceptance of service of a restraining order in the manner Stone chooses would be a procedural benefit. Like Gonzales in *Castle Rock*, Stone seems to be claiming a property interest in the state-mandated process itself.

The argument that denying a plaintiff proper service amounts to deprivation of a property interest was also considered and rejected in the Eastern District. *Malott v. Placer County*, No. 2:14-CV-1040 KJM EFB, 2014 WL 6469125, *12–14 (E.D. Cal. Nov. 17, 2014). There, the plaintiff alleged he had a "claim of entitlement under California law to have his properly issued subpoena served" and he was otherwise "deprived of that property interest without due process" when the subpoena was returned to him. *Id.* at *12. The plaintiff in *Malott* argued that California Code of Civil Procedure § 262.1 and California Government Code § 26608 created a property right in the service of a subpoena. *Id.* at *13. Relying on *Castle Rock*, the court found that neither statute gave rise to a constitutional property interest. *Id.* at *12–14.

Here, under his negligence cause of action, Stone asserts that the County's Executive Office has a duty to receive service of restraining orders under California Government Code section 960.8,[8] and that the Sheriff has a duty to serve Stone's restraining order under California Government Code § 26608.[9] (FAC ¶¶ 52–53.) But like the state statutes in *Malott*, these provisions set forth certain procedures for service and therefore, these procedures, without more, do not give rise to a property interest. *Cf. Mueller v. County of San Bernardino*, Case No. CV 18-151 DSF (SPx), 2018 WL 8130611, at *3–5 (C.D. Cal. May 9, 2018) (dismissing § 1983 claim where plaintiffs claimed an interest in California's child-protection processes).

---

[8] California Government Code section 960.8 states, in relevant part, that "[s]ervice of process in an action or proceeding against a public agency may be made in conformity with the information contained in the statement in the Registry of Public Agencies . . . on file at the time of that service. Service in this manner . . . constitutes personal service upon the public agency."

[9] California Government Code section 26608 states that "[t]he sheriff shall serve all process and notices in the manner prescribed by law."

The Court therefore **GRANTS** the County's motion to dismiss as to Stone's 42 U.S.C. § 1983 claim. As with the City's motion, although it appears unlikely that Stone can state a claim for violation of 42 U.S.C. § 1983 against the County, out of an abundance of caution, the Court provides Stone **with leave to amend** this claim to address the above-discussed deficiencies. *See Manzarek*, 519 F.3d at 1034–35.

### B. Stone's Negligent Infliction of Emotional Distress ("NIED") Claim

Stone appears to assert a claim for NIED. (FAC ¶¶ 49–55.) "A claim of negligent infliction of emotional distress is not an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1377 (2010). A plaintiff must show that the emotional distress was "serious" to recover damages for NIED when there is no accompanying personal, physical injury. *Id.* (citing *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 927–30 (1980)).

Stone alleges that the County breached its duty under California Government Code section 960.8 to "receive the service of [his] restraining order" against K. Thomas. (FAC ¶ 52.) Stone also seeks to hold the County liable for the acts and omissions of the Sheriff and Executive Office staff under California Government Code section 815.2. (FAC ¶ 54.) To this end, Stone alleges that the Sheriff breached a duty to serve his restraining order on K. Thomas' conservator under Government Code section 26608. (FAC ¶ 53.)

#### 1. Direct Liability

The County argues that it is not liable for state law torts in the absence of a statute that imposes a mandatory duty on it. (County Mot. 10.) Under California's Government Claims Act, "liability of a public entity for an injury is [only] statutory." *Leon v. County of Riverside*, 64 Cal. App. 5th 837, 846 (2021). "Section 815, subdivision (a), the cornerstone of the Act, provides that, [e]xcept as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other

person." *Id.* (internal quotation marks and citations omitted). Under Government Code section 815.6, "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury," a public entity may be liable. *See State of California v. Superior Court*, 150 Cal. App. 3d 848, 854 (1984). There is a three-pronged test to establish liability under section 815.6: (1) the "enactment must create a mandatory, not discretionary, duty," (2) the "enactment must intend to protect against the kind of risk of injury suffered by the party asserting" section 815.6 liability, and (3) the "breach of the mandatory duty must be the proximate cause of the injury suffered." *Id.*

Stone fails to state a plausible claim that the County is directly liable for negligence. At the outset, section 960.8 does not appear to apply to Stone's situation. "[T]he provisions of Government Code sections 960–960.8 provide for service of process in an action or proceeding against a public agency." *Thierfeldt v. Marin Hosp. Dist.*, 35 Cal. App. 3d 186, 199 (1973). Here, Stone only intended to serve the Executive Office because he believed doing so would constitute service on the Director, which would result in service on K. Thomas. Thus, Stone's "action or proceeding" was always against K. Thomas, not a public agency.

Finally, even if section 960.8 imposed a mandatory duty to accept service and was designed to protect against the kind of negligence Stone alleges, Stone has not alleged the elements necessary to state an NIED claim. Stone pleads that the County acted with intent or reckless disregard for his rights, but Stone has not alleged that this conduct caused him serious emotional distress or an injury of any kind. Notably, Stone does not seek any damages. (*See* FAC ¶¶ 49–55.) Accordingly, Stone has failed to allege that the "breach of [a] mandatory duty [was] the proximate cause of [an] injury suffered." *State of California*, 150 Cal. App. 3d at 854.

### 2. *Vicarious Liability*

Stone also fails to state a claim that the County is vicariously liable for negligence. "A public entity is liable for injury proximately caused by an act or

omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee." Cal. Gov't Code § 815.2(a). A "county is ordinarily not liable if the employee's act or omission would not give rise to a cause of action against that employee[,] or of the employee is immune from liability. Thus, the county's liability depends on the liability of its employee[s]." *Walker v. County of Los Angeles*, 192 Cal. App. 3d 1393, 1397 (1987) (internal citations omitted).

Even if the Sheriff or Executive Office staff did have a duty to serve or accept service of Stone's restraining order, Stone has failed to sufficiently plead the remaining elements to state a claim for negligence, namely, that he suffered serious emotional distress, that the alleged conduct was the proximate cause of any injury, and that he is seeking damages for an injury. *See Wong*, 189 Cal. App. 4th at 1377. Accordingly, the Court **GRANTS** the County's motion dismiss Stone's NIED claim **with leave to amend** this claim to address the above-discussed deficiencies. *See Manzarek*, 519 F.3d at 1034–35.

## VII. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** the City's and County's motions to dismiss, (ECF Nos. 21, 24), **with leave to amend** the FAC as described above. If Stone chooses to file a Second Amended Complaint, he must do so within **twenty-one (21) days** of the date of this Order, in which case Defendants shall answer or otherwise respond no later than **fourteen (14) days** from the date the Second Amended Complaint is filed. If Stone chooses not to amend, his claims shall be deemed dismissed with prejudice and the case shall be closed as of the lapse of the amendment deadline.

Moreover, the Federal Pro Se Clinic offers free guidance to individuals representing themselves in federal civil actions. The Los Angeles Clinic operates only by appointment, which may be made by calling (213) 385-2977, Ext. 270 or by visiting http://prose.cacd.uscourts.gov/los-angeles. Clinic staff can respond to many

questions with a telephonic appointment or by email. In-person appointments may be available at the Roybal Federal Building and Courthouse, 255 East Temple Street, Suite 170, Los Angeles, California 90012. The Court encourages Stone to visit the Clinic or otherwise consult with an attorney prior to amending his FAC.

**IT IS SO ORDERED.**

July 25, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**